```
IN THE UNITED STATES DISTRICT COURT
   FOR THE MIDDLE DISTRICT OF GEORGIA
            COLUMBUS DIVISION
```

ROBERT J. FREY,                   *

    Plaintiff,                *

vs.                               *
                                          CASE NO. 4:18-CV-191 (CDL)
ANTHONY BINFORD MINTER and        *
HAROLD BLACH, JR.,
                                  *
    Defendants.
                                  *

## O R D E R

Robert J. Frey filed this defamation action against Anthony Binford Minter and Harold Blach, Jr. in Florida state court. He initially sought $15,001.00 in compensatory damages, plus punitive damages in an unspecified amount. Defendants moved to dismiss the action for lack of personal jurisdiction in Florida. The state court held a hearing and denied the motion to dismiss. Frey then amended his Complaint to seek $15,001.00 in compensatory damages and $10,000,000.00 in punitive damages. Based on the Amended Complaint, Defendants concluded that diversity jurisdiction existed and removed the action to the U.S. District Court for the Middle District of Florida. Defendants filed a motion to dismiss for failure to state a claim (ECF No. 8) and a motion to transfer the action to this Court (ECF No. 9). Frey filed a motion to remand (ECF No. 16), and Defendants filed a motion for reconsideration of the state

court's order denying their motion to dismiss (ECF No. 23). The Florida U.S. District Judge granted Defendants' motion to transfer (ECF No. 9) the action to this Court. *See* Order (Sept. 19, 2018), ECF No. 39. The other motions remain pending. After the transfer, Frey filed a motion to transfer (ECF No. 41), asking that this action be transferred back to the U.S. District Court for the Middle District of Florida if it is not remanded to the Florida state court.

For the reasons set forth below, Frey's motion to remand (ECF No. 16) and motion to transfer (ECF No. 41) are denied. Defendants do not challenge personal jurisdiction in this Court, and their motion for reconsideration of the Florida state court's order denying their motion to dismiss for lack of personal jurisdiction (ECF No. 23) is moot. Finally, Defendants' motion to dismiss for failure to state a claim (ECF No. 8) is granted in part and denied in part.

DISCUSSION

**I. Frey's Motion to Remand (ECF No. 16)**

If an action is removed to federal court, the plaintiff may seek remand to state court based on a "defect" with the removal. 28 U.S.C. § 1447(c). "One such defect, commonly referred to as litigating on the merits, effectively waives the defendant's right to remove a state court action to the federal court." *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365

F.3d 1244, 1246 (11th Cir. 2004) (per curiam). Frey argues that this defect exists here because Defendants litigated their motion to dismiss for lack of personal jurisdiction in the state court. But the "litigating on the merits" waiver of the right to remove can only occur if the right to remove is apparent and the defendant takes substantial action in the state court case. Litigation *before* the right to removal becomes apparent does not waive the right to remove.

Here, Frey filed this action in state court on July 5, 2017. He sought $15,001.00 in compensatory damages and an unspecified amount in punitive damages. Compl. 18, ECF No. 1-1 at 18. Defendants propounded jurisdictional requests for admission asking Frey to admit that he seeks damages in excess of $75,000; Frey denied those requests. Notice of Removal Ex. D, Pl.'s Resp. to Defs.' Jurisdictional Reqs. for Admis. ¶¶ 1-4, ECF No. 1-1 at 48-50. Thus, the initial Complaint and Frey's jurisdictional discovery responses did not suggest that the amount in controversy exceeded the jurisdictional threshold of $75,000.00. So, when Defendants were litigating their motion to dismiss in the state court, Defendants did not have any right to remove that could be waived. This action was not removable until June 14, 2018, when Frey filed a First Amended Complaint amending his prayer for damages to seek $15,001.00 in compensatory damages and $10,000,000.00 in punitive damages.

3

When the action became removable, Defendants did not waive their right to remove—they filed their notice of removal on July 2, 2018, within one year of the commencement of this action and within thirty days of receiving Frey's amended complaint. For these reasons, Frey's Motion to Remand (ECF No. 16) is denied.

**II. Frey's Motion to Transfer (ECF No. 41)**

Frey asserts that this action should be transferred back to the U.S. District Court for the Middle District of Florida under 28 U.S.C. § 1404. Two Florida District Judges thoroughly analyzed the transfer factors and concluded that this case should be litigated in the Middle District of Georgia.[1] The Court finds no reason to transfer the action back to Florida. Frey's motion to transfer (ECF No. 41) is denied.

**III. Defendants' Motion to Dismiss (ECF No. 8)**

A. <u>Choice of Law</u>

Before the Court reaches the merits of Defendants' motion to dismiss, the Court must determine whether Florida or Georgia law applies. Frey, who lives in Florida, commenced this action in Florida contesting the publication of an article in a Georgia legal newspaper regarding a Georgia lawyer's comments on Frey's actions during Georgia litigation. Frey argues that Florida law applies in this action and that his Amended Complaint states a

---

[1] Before Plaintiff filed this action, he filed a substantially similar action in the U.S. District Court for the Middle District of Florida but voluntarily dismissed it after the Florida District Judge ordered that the action be transferred to this Court.

4

claim under Florida law. Defendant argues that Georgia law applies and that Frey fails to state a claim under Georgia law.

"Federal courts sitting in diversity apply the forum state's choice-of-law rules." *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). But, "when a case is transferred from one forum to another, the transferor court's choice-of-law rules apply to the transferred case even after the transfer occurs." *Id.* Thus, the Court must apply Florida's choice-of-law rules.

Florida resolves conflict-of-laws questions for tort cases using the "significant relationships test" set forth in the Restatement (Second) of Conflict of Laws. *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (adopting significant relationships test and rejecting the "traditional lex loci delicti rule"). The goal is to determine which state "has the most significant relationship to the occurrence and the parties under the principles stated in § 6" of the Restatement.[2] *Id.* (quoting Restatement (Second) of Conflict of Laws § 145(1) (Am. Law Inst. 1971)). When "applying the principles of § 6 to

---

[2] Section 6 states that "the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6(2) (Am. La. Inst. 1971).

5

determine the law applicable to an issue," the courts consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* (quoting Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971)); *accord Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (applying Florida law). These factors are considered "according to their relative importance with respect to the particular issue." *Michel*, 816 F.3d at 694 (quoting *Bishop*, 389 So.2d at 1001). In addition, the Restatement instructs that "[i]n an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties," except in cases of multistate defamation. Restatement (Second) of Conflict of Laws § 149 (Am. Law Inst. 1971). In cases of multistate defamation, the Restatement instructs that the applicable law is "the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties." *Id.* § 150(1). For a natural person, "the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state." *Id.* § 150(2). However, a

6

state other than the state of the plaintiff's domicil may have the most significant relationship if the allegedly defamatory statement related to the plaintiff's activity in the non-domicil state or the place of principal circulation was in the non-domicil state. *Id.* § 150(2) cmt. e.

In this case, the conduct causing the injury occurred in Georgia when Minter made certain comments that were published in the *Daily Report*, a Georgia legal newspaper that is principally circulated in Georgia. Minter is a Georgia resident. The contentious relationship between Frey and Minter is centered in Georgia, where the two have been adversaries in several garnishment proceedings. The allegedly defamatory statement related to Frey's activity in Georgia litigation. The *Daily Report* article containing Minter's remarks was republished online. Frey, who lives in Florida, received a copy of it via email from a former client who also lives in Florida. Although Frey is only licensed to practice law in Georgia and is not licensed to practice law in Florida, Frey maintains his law office in Sarasota, Florida and represents Florida citizens and Georgia citizens in matters involving Georgia law or federal tax law. Frey alleges that the online publication of the article harmed him in Florida. Thus, the injury occurred at least partly in Florida where Frey lives and where the article was available via the internet.

The Court finds that (1) the "place of injury" factor weighs in favor of finding that Florida has the most significant relationship to this matter, (2) the domicil of the parties factor is neutral, (3) the two other factors weigh in favor of finding that Georgia has the most significant relationship to this matter, and (4) the allegedly defamatory statement was related to Frey's activity in Georgia and was published in a legal newspaper with its principal circulation in Georgia. Weighing these factors, the Court finds that Georgia has the most significant relationship to this matter. Accordingly, Georgia law applies.

B. Analysis

Defendants argue that Frey's Complaint fails to state a claim for defamation under Georgia law. "To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule

8

12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

Defendants argue that (1) Frey's Complaint fails to state a claim for defamation per se; (2) Frey's defamation claim fails because Minter's statements were truthful; and (3) Frey's claim should be stricken under Georgia's anti-SLAPP statute. The Court addresses each argument in turn.

### *1. The Allegedly Defamatory Statements*

Frey's claims are based on Minter's statements that were reported in the *Daily Report*:

- Minter "said his efforts to garnish funds from a former Aflac executive have been repeatedly stymied by another lawyer who previously represented the executive."

- Minter "claims that he's being blocked from collecting [a judgment for his client] by [Frey], who holds a years-old judgment against the former Aflac executive [, Frey's former client]."

- "According to Minter, [Frey] apparently has no intention of collecting on the $300,000 judgment but is using it to block anyone else's efforts to target his ex-client's funds."

- "'I'm arguing that it's a fraudulent arrangement; impermissible, unethical, and void,' said Minter. 'If this is permissible, any debtor could evade future creditors by arranging, under confidential terms, for an existing judgment debt to be assigned to his own attorney. The debtor's attorney could keep doing legal work to ensure the old judgment debt never gets paid, but

9

> then deny other would-be garnishors based on his 'owing' a prior judgment.'"

Pl.'s Aff. Ex. B, Greg Land, *Garnishment Action Accuses Lawyer of Using Unpaid Judgment to Block Debt Collection*, Daily Report, Aug. 19, 2016, ECF No. 1-2 at 220-21.[3] The article noted that Frey assumed emeritus status with the Georgia bar in 2015. *Id.*

  *2. Defamation Per Se Claim*

Frey contends that Minter's statements amount to defamation per se. The Georgia law distinction between defamation per se and defamation is that the plaintiff is not required to prove special damages to recover on a defamation per se claim. A "private figure" plaintiff must prove four elements to prevail on a defamation claim under Georgia law: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the 'actionability of the statement irrespective of special harm.'" *Mathis v. Cannon*, 573 S.E.2d 376, 380 (Ga. 2002) (quoting Restatement (Second) of Torts § 558 (Am. Law Inst.

---

[3] The article appears in many places in the record, including as an attachment to Plaintiff's Complaint. *See* Compl. Ex. E, ECF No. 1-2 at 83-84. The Court cites the version that was attached to the Notice of Removal as one of filings in the state court proceeding because it contains the headline and the byline; the version attached to Plaintiff's Complaint does not. The body of the article is identical to the article attached to Plaintiff's Complaint.

1977)).[4]  To be defamation per se, "the words are those which are recognized as injurious on their face—without the aid of extrinsic proof.  Should extrinsic facts be necessary to establish the defamatory character of the words, the words may constitute slander, but they do not constitute slander per se." *Cottrell v. Smith*, 788 S.E.2d 772, 781 (Ga. 2016) (quoting *Bellemead, LLC v. Stoker*, 631 S.E.2d 693, 695 (Ga. 2006)).

The three categories of defamation per se under Georgia law are: "(1) Imputing to another a crime punishable by law; (2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society; [and] (3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein[.]"  O.C.G.A. § 51-5-4(a).  Here, Frey argues that Minter imputed a crime to him and made charges calculated to injure him in his business.

In regard to imputing a crime, "[t]o constitute slander per se, . . . the words at issue must charge the commission of a specific crime punishable by law.  Where the plain import of the

---

[4] If the plaintiff is a public figure, then a more stringent standard applies.  *Mathis*, 573 S.E.2d at 380.  Defendants summarily argue that the more stringent "public figure" standard applies, but they did not present a factual basis for this argument, and the Court cannot conclude based on the present record that Frey should be considered a public figure for purposes of this action.  *See id.* at 381 (explaining the difference between public figures and private persons); *accord Atlanta Journal-Constitution v. Jewell*, 555 S.E.2d 175, 183 (Ga. Ct. App. 2001) (same).

words spoken impute no criminal offense, they cannot have their meaning enlarged by innuendo." *Dagel v. Lemcke*, 537 S.E.2d 694, 696 (Ga. Ct. App. 2000) (alterations in original) (quoting *Parks v. Multimedia Techs., Inc.*, 520 S.E.2d 517, 527 (Ga. Ct. App. 1999)). The statement "must give 'the impression that the crime in question is being charged, couched in language as might reasonably be expected to convey that meaning to any one who happened to hear the utterance.'" *Taylor v. Calvary Baptist Temple*, 630 S.E.2d 604, 607 (Ga. Ct. App. 2006) (quoting *Bullock v. Jeon*, 487 S.E.2d 692, 695 (Ga. Ct. App. 1997)). "[V]ague statements or even derogatory comments do not reach the point of becoming slander per se when a person cannot reasonably conclude from what is said that the comments are imputing a crime onto the plaintiff." *Id.* Here, though Minter said he believed that Frey entered a "fraudulent arrangement," his words did not accuse Frey of committing any specific crime punishable by law. Frey thus fails to state a claim for defamation per se under the "imputing a crime" category.

"As for defamation in regard to a trade, profession, or office, '[t]he kind of aspersion necessary to come under this phase of the rule of slander per se must be one that is especially injurious to the plaintiff's reputation because of the particular demands or qualifications of plaintiff's vocation. . . .'" *Cottrell*, 788 S.E.2d at 781-82 (alterations in

original) (quoting *Bellemead, LLC*, 631 S.E.2d at 695). "[T]he words must either be spoken of the plaintiff in connection with his calling or they must be of such a nature such as to charge him with some defect of character or lack of knowledge, skill, or capacity as necessarily to affect his competency successfully to carry on his business, trade, or profession." *Id.* at 782 (alterations in original) (quoting *Bellemead, LLC*, 631 S.E.2d at 695). Here, though Minter's words disparage Frey's reputation as a lawyer, it is undisputed that Frey had emeritus status with the Georgia Bar when Minter's allegedly defamatory statements were published—therefore, he was not permitted to practice law. *See* Ga. State Bar R. 1-202(d) (stating that emeritus members "shall not be privileged to practice law" except in certain pro bono cases). It is not clear how Minter's statements could injure Frey in a profession from which he was essentially retired.

Furthermore, even if a disparaging statement against a retired lawyer could be considered defamation per se, "language imputing to a . . . professional man ignorance or mistake on a single occasion and not accusing him of general ignorance or lack of skill is not actionable per se." *Cottrell*, 788 S.E.2d at 782 (quoting *Kin Chun Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1349 (N.D. Ga. 2013)). "A charge that plaintiff in a single instance was guilty of a mistake,

impropriety or other unprofessional conduct does not imply that he is generally unfit." *Id.* (quoting *Kin Chun Chung*, 975 F. Supp. 2d at 1349). Here, Minter argued that Frey on one occasion structured the assignment of a judgment against his former client in an improper way, then used the judgment to protect his former client from other judgment holders. This charge does not imply that Frey was generally unfit to practice law. Frey thus fails to state a claim for defamation per se under the "impugning plaintiff's business" category.

For the reasons set forth above, Frey did not adequately plead a claim for defamation per se, so damages are not inferred. Instead, he must prove special damages caused by the alleged defamation. The Court finds that Frey adequately pled special damages to avoid dismissal at this stage of the proceedings.

### 3. *Defendants' "Truth" Defense*

Defendant argues that even if Frey's Complaint adequately alleged special damages caused by Minter's statements, Frey's defamation claim is still barred because Minter's statements were truthful. Defendants are correct that truth, if proved, is a complete defense to a defamation claim. O.C.G.A. § 51-5-6. Defendants appear to contend that Minter's statements were merely statements of opinion rather than actionable statements of fact. But there is "no wholesale defamation exception for

anything that might be labeled 'opinion.' An opinion can constitute actionable defamation if the opinion can reasonably be interpreted, according to the context of the entire writing in which the opinion appears, to state or imply defamatory facts about the plaintiff that are capable of being proved false." *Gettner v. Fitzgerald*, 677 S.E.2d 149, 154 (Ga. Ct. App. 2009) (quoting *Gast v. Brittain*, 589 S.E.2d 63, 64 (Ga. 2003)). Here, Frey's defamation claim is based on Minter's statement that Frey structured the assignment of a judgment against his former client in an improper way and then, without any intention of collecting the judgment, used the judgment to protect his former client from other judgment holders. These statements certainly imply defamatory facts about Frey that are capable of being proved false. Accordingly, the Court declines to dismiss Frey's complaint on this ground at this time.

*4. Georgia's Anti-SLAPP Statute*

Defendants further argue that Frey's Complaint should be stricken under Georgia's anti-SLAPP (strategic lawsuits against public participation) statute, O.C.G.A. § 9-11-11.1. A SLAPP action "is a lawsuit intended to silence and intimidate critics or opponents by overwhelming them with the cost of a legal defense until they abandon that criticism or opposition." *Jubilee Dev. Partners, LLC v. Strategic Jubilee Holdings, LLC*, 809 S.E.2d 542, 544 (Ga. Ct. App. 2018) (quoting *Rogers v.*

15

*Dupree*, 799 S.E.2d 1, 5 (Ga. Ct. App. 2017)). "Georgia's anti-SLAPP statute is intended to protect persons exercising their rights to free speech and to petition." *Id.* The statute provides:

> A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

O.C.G.A. § 9-11-11.1(b)(1).

The Court assumes for purposes of the present motion that Minter's statements are protected under the anti-SLAPP statute, although the Court is not convinced that Frey's present defamation action is the type of oppressive and speech-chilling litigation that the anti-SLAPP statute was intended to address. The present record viewed in the light most favorable to Frey suggests that there is a bona fide action for defamation brought in good faith and not as abusive litigation to chill Defendants' constitutional rights. Notably, Frey filed this action in July 2017, approximately two months *after* this Court concluded that Frey held a "legitimate, unsatisfied judgment against" his former client that was "superior to Blach's judgment." *Blach v. AFLAC, Inc.*, No. 4:15-MC-5, 2017 WL 1854675, at *1 (M.D. Ga. May

16

8, 2017), *certified question answered sub nom. Blach v. Diaz-Verson*, 810 S.E.2d 129 (Ga. 2018). Moreover, Frey met his burden of showing that there is a probability he will prevail on his claim. Although the Court may consider evidence in determining whether Frey met this burden, neither Frey nor Defendants pointed to any evidence on this issue. Therefore, the Court is left with the Complaint and its exhibits, which if taken as true and viewed in the light most favorable to Frey establish a probability of success because Frey alleges facts to support each element of a defamation claim. For these reasons, the Court declines to dismiss Frey's action under the anti-SLAPP statute.

CONCLUSION

As discussed above, Frey's motion to remand (ECF No. 16) and motion to transfer (ECF No. 41) are denied. Defendants' motion for reconsideration of the Florida state court's order denying their motion to dismiss for lack of personal jurisdiction (ECF No. 23) is moot. Defendants' motion to dismiss for failure to state a claim (ECF No. 8) is granted in part and denied in part.

IT IS SO ORDERED, this 4th day of December, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA