IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

ROBERT J. FREY,                           \*

    Plaintiff,                       \*

vs.                                            \*
                                                   CASE NO. 4:18-CV-191 (CDL)
ANTHONY BINFORD MINTER and    \*
HAROLD BLACH, JR.,
                                      \*
    Defendants.
                                      \*

O R D E R

The Court granted Defendants' summary judgment motion on all of Robert Frey's claims against them. Anthony Binford Minter's counterclaim for defamation remains pending for trial, and his second motion to compel document production from Robert Frey and non-party Hunton Andrews Kurth, LLP is now ripe. In light of its summary judgment ruling, the Court ordered Minter to notify the Court whether he intended to pursue the motion to compel and, if so, to articulate why the information sought is relevant to his counterclaim. Minter responded that he seeks a ruling on the motion to compel because although he has copies of the allegedly defamatory documents on which he bases his claim, as well as many other emails in which Frey says unflattering things about Minter, he wants to find out if there are any other documents relevant to whether Frey acted with malice when he made the allegedly defamatory statements. Frey argues that

there is no need to decide the motion to compel, asserting that the counterclaim lacks merit, that permitting Minter to discover documents relevant to a "sham" counterclaim would impose an undue burden on him, and that it would be "a serious waste of the Court's time" to permit the counterclaim to proceed to trial. Pl.'s Resp. to Def.'s Resp. to Court 1-2, ECF No. 106. But Frey did not file a summary judgment motion on Minter's counterclaim or seek leave to do so out-of-time, so the Court plans to try the counterclaim unless the parties resolve it. Thus, the Court must decide the second motion to compel. As discussed below, the motion (ECF No. 95) is granted to the extent that Frey shall produce omitted portions (if any) of three email chains. The motion is otherwise denied.

## DISCUSSION

**I. Motion to Compel Responses from Robert Frey**

The Court previously ordered Frey to respond to Minter's first request for production of documents. Order Granting Mot. to Compel 6 (June 12, 2019), ECF No. 88. Minter asserts that Frey did not adequately respond to his document requests because Frey's form of production is not reasonably usable and some documents are missing. Minter requested "[a]ll written communication (electronic or otherwise) between [Frey] and Kurt A. Powell from July 31, 2012 to the present. The request includes communications between you, Powell, and third persons."

Def.'s Req. for Produc. of Docs. 2 ¶ 1, ECF No. 79-3. He also requested "[a]ll written communication (electronic or otherwise) between [Frey] and Sal Diaz-Verson from January 1, 2015 to the present. The request includes communications between you, Diaz-Verson, and third persons." *Id.* at 2 ¶ 2.

A. <u>Form of the Production</u>

Minter did not specify a format for producing electronic information like emails (such as TIF, PDF, or native format), though he asked to receive it "via read-only optical storage disc, flash media, or cloud/online storage made accessible to Defendant." Def.'s Req. for Produc. of Docs. 2 ¶ 5. According to Minter, Frey responded to his document requests by producing a single 156-page document that includes emails and other documents that Frey printed and then physically cut and arranged on a scanner to create a PDF document. Minter argues that this form of production violates Federal Rule of Civil Procedure 34(b)(2)(E). Rule 34 requires that a "party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). And, if the "request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii).

The Court reviewed Frey's production. It does appear to be a collage of cut-and-pasted emails. Certainly, that is not the form in which the emails are ordinarily maintained. But it is reasonably usable, even if Frey did not expressly organize the emails to correspond to Minter's categories. Based on the Court's review, the first half of the PDF document contains messages that are generally responsive to Minter's request number 1, and the second half of the PDF document contains messages that are generally responsive to Minter's request number 2. They are mostly organized by date, although some emails were not arranged on the scanner in precise chronological order. Given Frey's representation that he had difficulty producing pre-2016 emails because he used a now-obsolete program to store them and has not yet found an efficient way to view the messages or import them into his current email program, it appears that Frey could only cure the shortcomings in his production by reprinting the emails and scanning them again, but without cutting and pasting first. But, except for a few emails discussed below, Minter already has the documents he sought. With an eye towards proportionality, the Court finds that requiring Frey to produce all these emails again, in a slightly different format, is unwarranted. The Court therefore declines to order Frey to supplement his production based on the form.

B. <u>Incomplete Email Chains</u>

Minter argues that Frey did not produce the complete content of some emails because he omitted portions of email chains when he cut and scanned them. Minter contends that pages 8, 15, and 33 of Frey's production are incomplete email chains.

Based on the Court's review, it appears that Frey may have only included portions of two email chains that were directly between Frey and Powell and did not include one or more of the preceding messages in each email chain. *See* Def.'s 2d Mot. to Compel Ex. A, Pl.'s Resp. to Def.'s Req. for Produc. of Docs. 8, portion of email chain between R. Frey, B. Voelzke & K. Powell (Jan. 17, 2013), ECF No. 95-2 at 8; Def.'s 2d Mot. to Compel Ex. A, Pl.'s Resp. to Def.'s Req. for Produc. of Docs. 15, email from K. Powell to R. Frey (Sept. 30, 2015), ECF No. 95-2 at 15 (purporting to forward message with subject "Diaz/Blach: Amendable Defect"). If Frey did omit portions of those email chains that were ultimately sent from Frey to Powell (or vice versa), he should not have. It is not clear that any portion of the chain has been omitted on page 33, but if it has, it should not have been. *See* Def.'s 2d Mot. to Compel Ex. A, Pl.'s Resp. to Def.'s Req. for Produc. of Docs. 33, Email from R. Frey to K. Powell (Jan. 27, 2016), ECF No. 95-2 at 33 (forwarding email with subject "HB377 (from 2013, 2014 & 2015 sessions)"; forwarded message appears to be included).

5

In summary, if Frey did not produce all of the messages in these three email chains that were ultimately included in communications between Frey and Powell, he should have. They are part of communications between Frey and Powell, even if neither was the sender of the original message in the chain. Accordingly, Minter's motion to compel on this point is granted. Within fourteen days, Frey shall produce to Minter complete copies of the email chains discussed above.

C. <u>Emails From Third Parties to Frey</u>

Minter complains that Frey did not produce communications from third parties to Frey that were copied to Powell, such as emails from associates who worked for Powell. But it is not clear from Minter's request that he sought communications from third parties to Frey that copied Powell. Such communications are not "between" Frey and Powell. Frey is thus not required to produce them.

D. <u>"Redacted" Emails</u>

Minter asserts that Frey redacted portions of emails on pages 43, 65, 65, 88, 92, 124, and 151 of his production. Based on the Court's review of pages 43, 64, 65, 88, 92, and 124, the marks—which Frey attributes to his scanner—are not "redactions." Moreover, Frey produced new copies of most of these documents. This issue is moot.

Page 151 is redacted. It is an email from Diaz-Verson to Frey forwarding a joke, and Frey redacted the names and email addresses of the other recipients. The Court cannot see how the forwarded joke is relevant to any claims in this action. And, Frey has produced an unredacted version, so this issue is moot.

### E. Minter's Request for Expenses

Because most of the problems with Frey's response likely could have been avoided if Minter had specified a format for producing emails and more clearly expressed which communications he requested, the Court declines to award Minter expenses. *Cf.* Fed. R. Civ. P. 37(b)(2)(C) (requiring disobedient party to pay reasonable expenses caused by his failure to comply with a court order "unless the failure was substantially justified or other circumstances make an award of expenses unjust").

## II. Motion to Compel Responses from Hunton Andrews Kurth, LLP

Minter subpoenaed documents from non-party Hunton Andrews Kurth, LLP. The documents sought by that subpoena are the same documents that are the subject of Minter's document request number 1 to Frey: all written communication between Frey and Kurt A. Powell from July 31, 2012 to the present. Although Hunton objected to the subpoena, it produced forty-nine e-mails and a privilege log describing thirty-five additional e-mails that were sent and received in 2012 relating to Diaz-Verson's settlement with Porter Bridge and the assignment of the judgment

to Frey.  Minter asserts that this production was not enough and filed a motion to compel production of all other documents responsive to his subpoena.  Hunton objects to producing any additional documents because the cost of producing them would be significant.

The Court granted the original motion to compel as to Hunton because it concluded that Minter had the right to assure himself that Frey's production was complete by subpoenaing the documents from Hunton.  But, the Court expressed concern about imposing unnecessary costs on a non-party because the documents are available from a party.  After all, a party may only obtain discovery "that is relevant to any party's claim or defense and proportional to the needs of the case," and the Court "*must* limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."  Fed. R. Civ. P. 26(b) (emphasis added). Here, Minter requested communications between Frey and Powell for a period of seven years, regardless of whether they mention him, the garnishment actions, or the action underlying the garnishment actions.  And, Minter's subpoena to non-party

8

Hunton was duplicative of his document request to Frey. The Court therefore ordered that if Minter wished to pursue his subpoena against Hunton, Minter should pay for Hunton's expenses associated with responding to the subpoena.

The Court instructed Hunton to provide Minter with an estimated cost for responding to the subpoena, and the Court told Hunton that if it claimed privilege as to any documents, it should produce the documents *in camera* to the Court with a privilege log. Order 8 (June 12, 2019), ECF No. 88. Hunton informed Minter that it had identified roughly 860 potentially responsive documents and that it would incur $22,932.00 in costs and expenses to review and produce the documents and privilege log.[1] Def.'s 2d Mot. to Compel Attach. 4, Letter from E. Taylor to A. Minter (June 26, 2019), ECF No. 95-4.

Minter seeks clarification on what the Court meant when it stated that Minter should pay "expenses associated with responding to" his subpoena. Order 8 (June 12, 2019). He suggests that the Court only meant that Hunton could recover "costs" similar to those recoverable in a taxation of costs under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, and that the Court did not intend to have Minter compensate Hunton for a privilege review because the Court

---

[1] It is not clear whether this number includes the eighty-four emails from 2012 that were already produced or listed on a privilege log.

"reserved for itself the discretion to make determinations as to privilege." Def.'s Mem. in Supp. of 2d Mot. to Compel 6, ECF No. 95-1. To be clear, the Court meant that Minter should pay expenses, including attorney's fees, that non-party Hunton must incur to respond to his subpoena. And, the Court certainly did not volunteer to conduct a privilege review of 860 documents. Rather, the Court stated that it would review a privilege log and any documents to which Hunton claims privilege. To create the privilege log, Hunton must review the documents for privilege. Minter argues Hunton's assertion of privilege on behalf of its client, Sal Diaz-Verson, is unfounded and that the documents he seeks are not covered by attorney-client privilege, but the Court finds that his arguments on this ground are unpersuasive. To comply with its ethical obligation not to produce attorney-client privileged documents, Hunton must review the documents for privilege before it produces them. If Minter wants Hunton to undertake this effort, he must pay for it.

Minter argues that even if Hunton may recover its expenses, including attorney's fees for a privilege review, the rates Hunton quoted in its estimate are unreasonable. Minter suggests that Hunton should be limited to the prevailing market rate in the Middle District of Georgia, rather than the Atlanta rates it quoted in its estimate. Minter did not cite any authority that a court, in shifting a non-party's costs of compliance with a

subpoena, must limit expenses to the prevailing market rate in the court's district. He did not submit any evidence regarding the reasonableness of Hunton's quoted rates, which Hunton argues are its customary rates that it charges its clients. And, he did not propose a reasonable rate. Based on this record, the Court declines to find that Hunton's quoted rates are unreasonable for purposes of responding to Minter's subpoena.

The Court recognizes that Hunton did partially respond to Minter's subpoena on March 21, 2019 and that in doing so, it reviewed a small number of documents and produced a privilege log describing thirty-five emails that it withheld based on attorney-client privilege. If Minter wishes to have the Court review the thirty-five emails and Hunton's March 21, 2019 privilege log (notwithstanding the fact that the Court has already rejected his argument that the documents could not be covered by attorney-client privilege), he shall file an appropriate motion. Before filing such a motion, Minter should consider whether it would further the first rule of civil procedure: that the parties must employ the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Finally, Hunton seeks the fees it incurred in responding to Minter's second motion to compel. At this point, the Court

declines to find that Minter engaged in misconduct or acted in bad faith, and Hunton's request for fees is thus denied.

CONCLUSION

As discussed above, Minter's second motion to compel (ECF No. 95) is granted to the limited extent set forth above but otherwise denied.

IT IS SO ORDERED, this 17th day of October, 2019.

                                           s/Clay D. Land
                                           CLAY D. LAND
                                           CHIEF U.S. DISTRICT COURT JUDGE
                                           MIDDLE DISTRICT OF GEORGIA